TONKEL *v.* YAZOO & M. V. R. Co.

(Division B. April 30, 1934. Suggestion of Error Overruled May 28, 1934.)

[154 So. 351. No. 31190.]

Wynn, Hafter & Lake, of Greenville, for appellant.

W. A. Percy and Ernest Kellner, Jr., both of Greenville, and Chas. N. Burch, H. D. Minor and Clinton H. McKay, all of Memphis, Tennessee, for appellee.

Argued orally by **Jerome S. Hafter**, for appellant, and by **Ernest Kellner, Jr.**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

J. B. Tonkel, administrator of the estate of M. Tonkel, deceased, brought suit against the appellee for injuries inflicted upon M. Tonkel occasioned by a collision between a switch engine of the appellee and an automobile being driven by M. Tonkel. The accident occurred about 7:15 A. M., at the crossing of O'Hea street with the railroad in the city of Greenville, Mississippi. M. Tonkel died

subsequent to the injury, but not from the results of the injury.

The plaintiff sought to introduce the physician who attended M. Tonkel in the hospital immediately after the injury, but the defendant objected to this testimony. Subsequently, when the defendant was offering its proof, it sought to introduce this physician and other physicians who attended M. Tonkel, and on the plaintiff objecting thereto, the court sustained his objection. The defendant also sought to introduce an X-ray picture made by a party employed by one of the physicians who attended M. Tonkel and who had the picture made for the determination of the injuries inflicted upon M. Tonkel by the collision of his automobile with the switch engine of the appellee. The party who made the picture testified that she had no contract with M. Tonkel to make the picture, but was directed to do so by the firm of physicians by whom she was employed, and that the picture was turned over to the physicians for their use, and that she was not paid for this service by M. Tonkel. Objection to this testimony was made and sustained by the court.

The testimony of the employees who were operating the switch engine tended to show that M. Tonkel drove upon the track without stopping to look or listen for the approach of an engine, and that the bell was ringing.

There was other proof that the bell was not ringing nor the whistles blowing, and that the engine was being operated in excess of six miles per hour.

The defendant introduced a statement made by M. Tonkel taken down by a stenographer, reading as follows:

"Q. Go ahead please sir and tell me what happened: A. I was driving along pretty well—not a concrete street —a gravel street. It was exactly 7:15 in the morning. I was about the crossing, the first track, you see and all of a sudden I saw the engine hit me right straight the

car. I didn't hear or see the train. First thing I saw it was right on me. When it hit me, of course, I was frightened. The next thing it was pushing me at least a hundred and fifty feet. I tried to let myself have it sideways. See it hit the car on this side (right). Thought I might be able to get out. When it hit me a good lick over my shoulder (left) the lick on the side of the car and good like right here (right hip) and knocked me on my left side. Pinned me under the steering wheel. I tried to get up. I saw I couldn't get up from the drivers side of the car there laying on the ground. Right side engine was right on it. I was frightened. No chance. Only thing I was in hopes was the engine would stop. When it did stop, I was able to see a couple of men, maybe three, looking at me, but they didn't do anything. I hollered, 'Please back the engine off of me so I can get out.' They never done a thing. I hollered again, 'Please have them back the engine off of me so I can get up.' When they backed up I got up and when I got out I straightened myself up and in the excitement didn't know how bad I was hurt. Looked back to the engine and the car and it made me sick. Next thing I was here in the hospital. The first day I suffered a great deal and suffered a great deal the second day and the next day I started feeling better. All but my back right here, can't do a thing with my back. When I get down, I can't get up. Hurts me so. I was struck right there toward the right side. I am a little bit sore in my chest. Got another bruise on my right shoulder, can't reach it with my hand. Hit me with something from the engine. Then I had a cut over this hand. Dr. Gamble gave me a tetanus shot. To keep me from getting lockjaw.

"Q. About how fast were you driving? A. Must have been driving between fifteen and twenty miles. Wasn't driving fast at all.

"Q. Was it raining? A. It was a little bit foggy.

"Q. Did you stop before you reached the crossing? A. Before I reached the crossing I looked around. I don't think I stopped. Everything was clear.

"Q. About how far were you from the crossing when you looked? A. About ten feet from the crossing.

"Q. Did you look in both directions? A. I turned to the right and the left.

"Q. You never saw the train? A. No, sir.

"Q. Or heard the train? A. No, sir.

"Q. Was there anything to obstruct your view looking South? A. I remember I saw a water tank.

"Q. You were in that car alone? A. Yes, sir."

The court gave for the defendant three instructions, which, among others, are complained of, reading as follows:

"The court instructs the jury that when M. Tonkel passed the stop sign and did not stop, or look, or listen before going upon the right-of-way and the tracks of the defendant, he violated the laws of the state of Mississippi."

"The court instructs the jury that when M. Tonkel passed the stop sign and did not stop, or look, or listen before going upon the right-of-way and the tracks of the defendant, he violated the laws of the state of Mississippi, and was grossly negligent in so doing."

"The court instructs the jury, as a matter of law, that M. Tonkel was guilty of the grossest negligence in not stopping, or looking, or listening for a train before going upon the tracks belonging to the defendant."

There was a verdict and judgment for the plaintiff for one thousand five hundred dollars, from which this appeal is prosecuted because of the inadequacy of the damages allowed.

A motion for a new trial was made by the plaintiff in

the court below, but inadequacy of the damages allowed was not made a ground of said motion. The giving of the three instructions above set out was assigned as error in the motion for a new trial.

It is contended by the appellant that the court erred in not permitting Dr. Gamble, the physician who attended M. Tonkel, and who was the railroad physician, to testify as a witness in this case. We think the court correctly ruled that Dr. Gamble was incompetent, and in also ruling that the X-ray picture was incompetent because made for the use of the physicians, and was a part of the information acquired by the physicians in attending the patient.

We think, however, that the court was in error in granting the three instructions quoted above, peremptorily instructing the jury that M. Tonkel was guilty of gross contributory negligence. The statement offered by Tonkel in evidence and received by the court is to be taken as an entire statement, and it appears therefrom that he did not hear the bell ringing; that he looked right and left, and did not see the train or engine. Evidence as to contributory negligence should have been submitted to the jury on proper instructions. It is true that if the complaint was as to the inadequacy of damages allowed, on proper instructions, it would be necessary to make a motion for a new trial. The errors in giving instructions may be assigned, and if they contributed to an inadequacy of damages the judgment would be reversed. In Coccora v. Light & Traction Co., 126 Miss. 713, 89 So. 257, it was held that where such errors contributed to the inadequacy of the verdict, the judgment would be affirmed as to liability, and reversed and remanded for trial as to damages alone. That case is applicable and controlling here, because liability was established, on competent evidence, and there is no cross-appeal as to liability. It is clear that the contributory negligence instructions above re-

ferred to contributed to the amount of the verdict being small. It may be that the jury would find that the engineer was guilty, on proper instructions, and if, in the exercise of their discretion, in apportioning damages between negligence, on the part of the defendant, and contributory negligence, on the part of the plaintiff, and there were proper instructions, their verdict might not be disturbed.

The judgment as to liability will be affirmed, but the judgment will be reversed as to the amount of damages allowed, and the cause will be remanded for a new trial for damages alone.

Affirmed in part, and reversed in part.